UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DANA GIBSON,                                  :
                Plaintiff,          :
                                                     :
v.                                            :   **OPINION AND ORDER**
                                                     :
D. TRAVIS, S. SASSI, R. ULYSSE, K.            :   14 CV 8764 (VB)
MITCHELL, J. WIAND, D. COOK, A.               :
GAMBLE, C. STRAUSS, A. PEREZ, ALBERT          :
PRACK, NANCY J. HEYWOOD, J.                   :
CAVALERI, J. O'BRYAN, J. GONZALEZ,            :
                Defendants.         :
---------------------------------------------------------------x

Briccetti, J.:

      In this Section 1983 action, plaintiff Dana Gibson, proceeding pro se and in forma pauperis, brings civil rights claims against defendants Travis, Sassi, Mitchell, Ulysse, Wiand, Cook, Gamble, Strauss, and Perez, current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), for alleged violations of her Eighth Amendment right to be free from the excessive use of force.  Plaintiff further alleges defendants O'Bryan, Cavaleri, Gonzalez, Prack, and Heywood, also current or former DOCCS employees, violated her Fourteenth Amendment right to procedural due process in connection with disciplinary proceedings that took place at the Downstate Correctional Facility ("Downstate") on May 23 and May 29, 2014.

      Now pending is defendants' Rule 12(b)(6) motion to dismiss all of the due process claims and the excessive force claim against defendant Perez. (Doc. #37).  Defendants have not moved to dismiss the excessive force claim against the other defendants.

      For the reasons set forth below, the motion is GRANTED as to defendants Perez, Prack, and Heywood, and DENIED as to defendants O'Bryan, Cavaleri, and Gonzalez.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.   <u>Factual Allegations</u>

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor.

A.   <u>May 19, 2014, Assaults and Administrative Complaint</u>

Plaintiff was a general population inmate at Downstate when, on May 19, 2014, she was allegedly assaulted on two separate occasions, first by defendants Sergeant S. Sassi and Officers Travis, Mitchell, and Ulysse, then by Sergeant Wiand and Officers Cook and Gamble.  After the assaults, she was taken to the infirmary, but Nurse Strauss allegedly refused to examine, treat or document plaintiff's injuries.  When plaintiff refused to sign the injury accident report, she claims she was assaulted again.  Plaintiff was then transferred to Downstate's Special Housing Unit ("SHU"), where she remained during the relevant period in the complaint.

On May 20, 2014, plaintiff filed a letter of complaint with Superintendent Perez, advising her of the assaults and the refusal to treat or document her reported injuries.  Superintendent Perez responded to plaintiff's complaints in a memorandum dated June 6, 2014, but allegedly did not take any action to remedy the wrong.

B.   <u>May 23 and May 29, 2014, Disciplinary Hearings</u>

Plaintiff was the subject of three Inmate Misbehavior Reports ("IMR"s) signed by Officers Sassi, Travis, and Wiand, issued on May 19, 2014, alleging plaintiff violated multiple DOCCS rules.  Plaintiff was assigned a pre-hearing employee assistant, Officer Gonzalez. Sometime before the hearing, plaintiff says she requested certain documents from Gonzalez, namely, Parts A-E of the Use of Force Report, the preliminary and final unusual incident report

("U.I. Report"), and all of the "To-And-From" Memoranda regarding the alleged incident of misconduct.  Gonzalez allegedly refused to provide plaintiff with the requested documents and told plaintiff she could get the documents from the hearing officer during the hearing.

On May 23, 2014, plaintiff appeared at two separate hearings related to the IMRs.  The first hearing was held before defendant Deputy Superintendent of Administration ("DSA") O'Bryan to address the IMRs signed by Officers Sassi and Travis; the second was held before defendant Captain Cavaleri to address the IMR signed by Sergeant Wiand.  At each of the hearings, plaintiff was formally charged with the DOCCS rule violations.  Plaintiff alleges some of the charging documents in the Cavaleri hearing contained a misspelling of Wiand's name.  Plaintiff pleaded not guilty to the charges at both hearings, and she objected to the hearings based on a lack of pre-hearing employee assistance.  Plaintiff alleges she had to proceed with both hearings, but at some point they were both adjourned.

The hearings were each reconvened on May 29, 2014.  According to the complaint, at the first reconvened hearing, plaintiff was provided with one of the documents she requested, namely Officer Mitchell's To-And-From Memorandum, but was not given the Use of Force Report, the U.I. Report, or Ulysse's, Sassi's or Travis's To-And-From Memoranda.  Moreover, plaintiff alleges she was not given any time to review the document she was given: "moments" after she was given the document, O'Bryan found plaintiff guilty of all of the alleged rule violations.  (Pl.'s Opp. at 9).  Plaintiff claims O'Bryan relied on at least two documents not provided to plaintiff, namely, the Sassi and Travis To-And-From Memoranda.  O'Bryan imposed penalties on plaintiff in the form of six months in SHU confinement, loss of packages, phones, and commissary, and four months' loss of good time credit.

3

At some point before the second reconvened hearing, plaintiff was allegedly provided with "some" of the documents requested in connection with the Wiand IMR.  (Compl. ¶ 28).  At the second hearing, Cavaleri found plaintiff guilty of all the alleged rule violations reported in the Wiand IMR.  Plaintiff claims Cavaleri relied only upon a written report "of a 'sergeant'" and supporting documentation.  (Id.).  He imposed penalties of six months in SHU confinement, loss of packages, phones, and commissary, and twelve months' loss of recreation.

  C. <u>Administrative Appeals</u>

On or about May 29, 2014, plaintiff filed administrative appeals of the guilty dispositions against her.  In the appeal of the first guilty disposition, plaintiff argued (i) Gonzalez deprived her of sufficient pre-hearing employee assistance; (ii) O'Bryan deprived her of the right to present documentary evidence; and (iii) O'Bryan deprived her of a fair and impartial hearing and hearing officer as the disposition was not based on substantial evidence.  In the appeal of the second guilty disposition, plaintiff argued (i) Gonzalez deprived her of sufficient pre-hearing employee assistance; (ii) she was deprived of notice of alleged rule violations; and (iii) she was deprived of a fair and impartial hearing and hearing officer as the disposition was not based on substantial evidence.

On or about June 9, 2014, plaintiff filed an addendum to her appeals to add allegations that O'Bryan and Cavaleri failed to conduct a formal mental health and intellectual capacity assessment on plaintiff, which plaintiff alleges should have been done because she had "consumed prescribed medication known to alter one's mental, emotional and mood state (i.e. 'Accolate' – AKA – 'Zafirlukast')."  (Compl. ¶¶ 23, 29).  Also on or about June 9, 2014, plaintiff sent letters of complaint to defendant Heywood requesting that she intervene based upon

O'Bryan and Cavaleri's failures to conduct a mental health and intellectual capacity assessment of plaintiff.  Heywood allegedly did not take any action on plaintiff's request.

On or around August 1, 2014, according to the complaint, defendant Prack "proactively participated in reviewing plaintiff's administrative appeal[s] and appeal addendum[s]" and affirmed the hearing dispositions without providing any explanation.  (Compl. ¶¶ 24, 30).

## DISCUSSION

I.   <u>Legal Standards</u>

   A.   <u>Rule 12(b)(6)</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Id</u>. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.

5

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

B.     Section 1983

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law." Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997). In addition, plaintiff must allege defendants' personal involvement in the claimed violation of his rights. Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001). In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.

II.     Excessive Force Claim Against Perez

Even construing the complaint in the light most favorable to plaintiff, the Court finds plaintiff has failed to state a plausible claim that Superintendent Perez was personally involved in the alleged conduct giving rise to plaintiff's excessive force claim. Plaintiff does not allege Perez was involved in the assaults or in the decision not to medically examine, document or photograph plaintiff's injuries. Rather, plaintiff contends she filed a letter of complaint with

6

Perez on the day after the assaults took place, in which she advised Perez about the assaults and the alleged refusal to take action on plaintiff's injuries.  By that time, the alleged excessive force violation had "concluded."  Bridgewater v. Taylor, 832 F.Supp.2d 337, 348-49 (S.D.N.Y. 2011) ("[T]he Eighth Amendment constitutional violation allegedly committed by [defendant corrections officer] had concluded by the time [the superintendent] was called upon to review it."); see also Jamison v. Fischer, 2012 WL 4767173, at *4 (S.D.N.Y. 2012) (Defendant could not be held liable "because the alleged constitutional violation had ceased.").[1]  Moreover, it is not apparent from plaintiff's complaint that Perez could have corrected the alleged wrong.  Id.

In short, plaintiff has failed plausibly to allege an excessive force violation by defendant Perez.

III.    Procedural Due Process Claims

"[T]o comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Williams v. Menifee, 331 Fed. Appx. 59, 60 (2d Cir. 2009) (quoting Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985)).

---

[1]      Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

7

A.      Pre-Hearing Assistance, Fair and Impartial Hearing, and Notice

Defendants Gonzalez, Cavaleri, and O'Bryan do not dispute they were personally involved in the disciplinary hearings giving rise to plaintiff's due process claims.  Instead, they argue the complaint does not sufficiently allege a due process violation against them.

The Court disagrees.

1.      Officer Gonzalez

Defendants are correct that an inmate's' right to assistance in disciplinary hearings is "limited."  Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993).  However, it is well established that prison inmates confined in SHU have a due process right to "substantive assistance" in disciplinary hearings.  Eng v. Coughlin, 858 F.2d 889, 898 (2d Cir. 1988) ("We think that for inmates disabled by confinement in SHU . . . the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment.") (citing Wolff v. McDonnell, 418 U.S. 539, 556-72 (1974)).  The assistance provided "certainly should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses.  At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself."  Id. at 898.

Although it is a close call, the Court finds plaintiff has adequately pleaded Officer Gonzalez did not meet well-established obligations.  In particular, Gonzalez allegedly refused to provide any of the documents plaintiff requested before the disciplinary hearings, and plaintiff only received some, but not all, of the documents at the hearings.

2.      DSA O'Bryan and Captain Cavaleri

Defendants are also correct that "some evidence" is all that is needed to make a finding of guilt in an inmate disciplinary hearing.  (Defs.' Mot. to Dismiss at 7).  However, the "some evidence" standard still requires more than what was allegedly relied upon here.  See e.g. Luna v.

8

Pico, 356 F.3d 481, 489 (2d Cir. 2004) (finding the "some evidence" standard was not met when defendants relied on a "misbehavior report, [a] letter from [the victim], and the testimony" of another inmate).

According to the complaint, DSA O'Bryan relied only on the IMRs and memoranda submitted by Officers Travis and Sassi.  O'Bryan did not rely on the To-and-From memoranda, which plaintiff alleges contradict the evidence relied upon.  Similarly, Captain Cavaleri allegedly relied only on a "written report of a sergeant and supporting documentation." (Pl.'s Opp. at 14).

Accepting plaintiff's allegations as true for the purpose of this decision, the Court finds plaintiff has alleged sufficient facts to support a claim that the dispositions of guilt in the disciplinary proceedings were not based on "some evidence."

However, the Court agrees with defendants that the misspelling of Sergeant Wiand's name on certain documents did not amount to a violation of plaintiff's due process right to notice of the charges against her.  Sira v. Morton, 380 F.3d 57, 72 (2d Cir. 2004) (due process requires only notice with "sufficient factual specificity to permit a reasonable person to understand what conduct is at issue.").  Nevertheless, for the reasons discussed above, plaintiff has stated a due process claim based on the other arguments of insufficient pre-hearing assistance and failure to provide a fair and impartial hearing.

B.     Failure to Provide a Mental Health Assessment

Defendants argue there is no due process right to a mental health assessment and therefore plaintiff has failed to state a claim on this basis against Heywood, Cavaleri or O'Bryan. The Court agrees.

As stated above, plaintiff's right to procedural due process guarantees her advance written notice of the charges against her, an opportunity to call witnesses and present

documentary evidence in her defense, and a written statement of reasons for the disciplinary action and evidence relied upon.  (Part III supra).  Due process does not guarantee a mental health assessment.  Davis v. Fischer, 2012 WL 177400, *7 (W.D.N.Y. 2012) (finding the failure to conduct a mental health evaluation required by state regulation, "does not establish a federal due process violation").

Defendant Heywood is accordingly dismissed from the case because this is the only allegation made against her.  As there was no adequately pleaded constitutional violation, there is no need to consider whether Heywood is entitled to qualified immunity.  See e.g. Deanda v. Hicks, 2015 WL 5730345, at *18 (S.D.N.Y. 2015) ("Because the Court finds that there was no unreasonable search and seizure . . . and, accordingly, no underlying constitutional violation, it is not necessary to further address whether [defendant] is entitled to qualified immunity.").

C.    Gonzalez, Cavaleri, and O'Bryan are Not Entitled to Qualified Immunity

Defendants argue Gonzalez, Cavaleri, and O'Bryan are entitled to qualified immunity on plaintiff's procedural due process claims.  The Court disagrees.

Qualified immunity insulates government officials from liability in suits against them in their individual capacity when their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether particular conduct violated a clearly established right, the Court looks "to Supreme Court and Second Circuit precedent existing at the time of the alleged violation."  Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d 415, 433 (2d Cir. 2009).  The relevant inquiry "is whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted."  Id. (quotations omitted); see also Anderson v. Creighton, 483 U.S. 635, 640 (1987).

10

With respect to the allegations against Officer Gonzalez, it is well established that prison inmates confined in SHU have a constitutional right to substantive pre-hearing assistance.  See supra Part III.A.1.  Likewise, with respect to the allegations against DSA O'Bryan and Captain Cavaleri, the requirement that disciplinary decisions be supported by "some evidence" is well-established.  See supra Part III.A.2.  The Court therefore finds plaintiff plausibly alleges Gonzalez, Cavaleri, and O'Bryan violated clearly established constitutional rights of which a reasonable person in their situation would have known.  Accordingly, dismissing plaintiff's claims against them at this stage of the case based on qualified immunity is inappropriate.

       D.      Prack is Entitled to Qualified Immunity

Judges in this District disagree over whether supervisory liability can be found in a Section 1983 case when an individual is alleged to have affirmed an unconstitutional disciplinary decision.  See Delgado v. Bezio, 2011 WL 1842294, at *9 (S.D.N.Y. 2011) ("[I]t cannot be said that the Iqbal holding precludes liability where, as is alleged here, the supervisory personnel affirmed a decision that they knew to have been imposed in violation of Plaintiff's due process rights, thus continuing the deprivation of liberty without due process of law.").  But see Jamison v. Fischer, 2012 WL 4767173, at *4 (S.D.N.Y. 2012) (defendant who upheld a decision on appeal "cannot be held liable under this theory because the alleged constitutional violation had ceased by the time that [defendant] was called upon to review Plaintiff's appeal. . . .  Put simply, [defendant] could not have corrected the alleged denial of Plaintiff's ability to call witnesses at the hearing because—by definition—the hearing ended before [defendant] became involved through Plaintiff's appeal.").

In Jamison, the Second Circuit had an opportunity to weigh in on appeal, but did not think it necessary.  Jamison v. Fischer, 617 Fed. Appx. 25, 28 n.1 (2d Cir. 2015) ("[W]e need not

address whether the district court correctly dismissed the complaint . . . for lack of personal involvement.").  As a result, the question is not settled in this Circuit.

Because it is not "clearly established . . . whether it would be clear to a reasonable [government official] that his conduct was unlawful in the situation he confronted," Okin v. Vill. of Cornwall–On–Hudson Police Dep't, 577 F.3d at 433, defendant Prack is entitled to qualified immunity on plaintiff's procedural due process claim.

## CONCLUSION

The motion to dismiss is GRANTED as to plaintiff's excessive force claim against defendant Perez and as to plaintiff's procedural due process claims against defendants Prack and Heywood.

The motion to dismiss is DENIED as to plaintiff's procedural due process claims against defendants Gonzalez, O'Bryan, and Cavaleri.

By separate order, the Court will schedule an initial conference for the purpose of setting a discovery plan and scheduling order.

The Clerk is instructed to terminate the motion (Doc. #37), and to terminate defendants A. Perez, Albert Prack, and Nancy J. Heywood.

Dated: February 24, 2016
     White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge